### HAYES v. SIMMONS et al.

No. 18417.  Opinion Filed Dec. 18, 1928.
Rehearing Denied May 7, 1929.

Frank P. Smith, Miller & Stephenson, and Burford, Miley, Hoffman & Burford, for plaintiff in error.

Carroll, Jameson & Severson, Holt & Kopplin, and Newton & Pinson, for defendants in error.

HEFNER, J. A proceeding was brought in the county court of Tulsa county to probate the will and testament of Hilly Bear, deceased. The county court denied the application to probate the will, and an appeal was taken to the district court of Tulsa county, and that court admitted the will to probate. Marchie Hayes, contestant and plaintiff in error, has brought the case here for review.

It is admitted that Hilly Bear was a full-blood Creek Indian and died in the summer of 1911 seized and possessed of the allotment of land made to her as a Creek citizen. The alleged will was not offered for probate until June 16, 1926, nearly 15 years after the death of Hilly Bear.

Her estate was administered in the county court of Tulsa county; a final decree of distribution was entered in that court in 1915 in which is was determined that Hilly Bear died leaving surviving her no issue nor children of issue, and no father nor mother, nor brother nor sister. but left surviving her husband, Marchie Hayes, the plaintiff in error herein, who was found to be her sole and only heir.

The devisees and legatees under the alleged will, or their representatives, were all parties to the decree of distribution and appeared upon the hearing of the petition for a decree of distribution of the estate either in person or by their representatives.

The proponents of the alleged will are the heirs of the devisees and legatees who were parties to the proceedings and decree of distribution. Since the distribution of the estate, various persons have acquired interests in the land allotted to Hilly Bear from Marchie Hayes, who had been declared the husband and sole heir of Hilly Bear by the county court.

The attempt to probate the alleged will was contested by Marchie Hayes on several grounds. The will undertakes to devise the allotment of Hilly Bear. In his protest Marchie Hayes alleged that he was the surviving husband of Hilly Bear and the alleged will was invalid because it disinherited him and it was not acknowledged before and approved by the proper officer designated by the provisions of section 23, of the act of Congress of April 26, 1906, as amended.

The trial court found as a matter of fact, and the evidence clearly so shows, that Marchie Hayes was living with Sah-ta-quan-ney as her husband by custom marriage up to the year 1900 or 1901, and that no divorce was ever granted to Marchie Hayes from this woman by any of the courts authorized to grant divorces. In 1901, Marchie Hayes and his wife separated under what is known as a Creek custom divorce. The record discloses that Marchie Hayes and Hilly Bear contracted a ceremonial marriage before a minister of the gospel on December 12, 1905, pursuant to a license regularly issued on December 9, 1905.

In this connection a portion of the findings of the trial court is as follows:

"If the Creek custom divorce and the Creek laws were not abolished by the Act of June 7, 1897, and the provisions referred to, they were undoubtedly abolished by section 26 of the Curtis Bill, which provided that after the passage and approval of that act, the laws of the various Indian Nations should not be enforced, and further by section 28 of that act, which provided that on and after October 1, 1898, all tribal courts should be abolished. Under these acts of Congress the court is of the opinion and holds that the Creek custom divorce was abolished on January 1, 1898, and if not on that date, from and after passage and approval of the Curtis Bill, which was at least two years before the separation of Marchie Hayes and his custom wife, Sah-ta-quan-ney. That being true and no divorce being had, the marriage of Marchie Hayes to Hilly Bear was, as a matter of law (though not by intent on the part of Marchie Hayes), bigamous and void. The court is of the opinion and holds and adjudges under this state of facts that Marchie Hayes has no standing in this court or in this case and no rights in the estate of Hilly Bear, either by inheritance or by the decree of distribution in case No. 1058, and therefore no right to raise the question of disinheritance of a surviving spouse or the failure of the will to be acknowledged and approved by any proper approving federal agency—and the court further finds and holds that the deceased, Hilly Bear, left no surviving legal spouse, at all—and to this finding and holding and judgment of the court, the contestant, Marchie Hayes. excepts."

It is now contended that the ceremonial marriage of Hilly Bear and Marchie Hayes

solemnized in 1905, and recognized by all parties for about 20 years, is invalid because at the time of the marriage Marchie Hayes was the lawful husband of Sah-ta-quan-ney. The evidence clearly shows that the separation of Marchie Hayes from his first wife constituted a valid divorce under the Creek tribal custom. The trial court, however, held that the Creek custom divorce was abolished by the Curtis Bill, effective on October 1, 1898.

This question has been recently before this court in the case of Unussee v. McKinney, 133 Okla. 40, 270 Pac. 1096. In that case Mistaley Chupco, a full-blood Creek Indian, was the allottee of, and died the owner of, the land involved in that suit. He and Nicey Unussee began living together as husband and wife in 1899. In 1902 or 1903, they voluntarily separated, and in 1903 or 1904 Nicey and Barnosee Unussee began living together as husband and wife. They reared a family of four children, and were still living together as husband and wife during the progress of the litigation. After the separation of Mistaley Chupco and Nicey, Mistaley and an Indian woman by the name of Yarner were united by ceremonial marriage, and continued to live together as husband and wife until 1920, when Mistaley died. Nicey Unussee claimed to be the lawful wife of Mistaley Chupco at the time of his death, and brought an action to recover his allotment. It was contended in that case, just as it is in the instant case, that after the passage of the Curtis Bill the tribal separation custom could not operate as a dissolution of the marital relations. This court held against that contention and held the separation in 1902 or 1903 according to the Creek tribal custom was in legal effect a divorcement. Mr. Justice Phelps, speaking for the court, said:

"A marriage contracted between members of an Indian tribe, in accordance with the customs of such tribe, where the tribal relations and government existed at the time of such marriage, and there was no federal statute rendering the tribal custom invalid, will be recognized by the courts as a regular and valid marriage for all purposes. And the same effect is also given to the dissolution of marriage, under the customs of the tribe, as is given to the marriage relation itself."

That decision fina'ly and correctly determines the question of the legal effect of the Creek custom divorce in this case. Under it, the separation of Marchie Hayes and Sah-ta-quan-ney was in legal effect a divorcement, and his relationship with her was not an impediment to his marriage with Hilly Bear several years after the separation. Under the facts in this case, Marchie Hayes was the surviving husband of Hilly Bear.

Section 11224, C. O. S. 1921, is as follows:

"Every estate and interest in real or personal property to which heirs, husband, widow, or next of kin might succeed, may be disposed of by will: Provided, that nt marriage contract in writing has been entered into between the parties; no man while married shall bequeath more than two-thirds of his property away from his wife, nor shall any woman while married bequeath more than two-thirds of her property away from her husband; provided, further, that no person who is prevented by law from alienating, conveying or incumbering real property while living shall be allowed to bequeath same by will."

This section was amended in 1925, but it was in full force and effect at the time the will under consideration was executed and at the time Hilly Bear died.

A portion of section 23 of Act of April 26, 1906, 34 Stat. 145, as amended by section 8 of the Act of May 27, 1908 (35 Stat. 312), is as follows:

"Provided, that no will of a full-blood Indian devising real estate shall be valid, if such last will and testament disinherits the parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States Court for the Indian Territory, or a United States commissioner, or a judge of a county court of the state of Oklahoma."

The will was not approved by any of the federal agencies mentioned. It is admitted that Hilly Bear was a full-blood Creek Indian and that her allotment was restricted.

Under the state statute, the will is inoperative as to Marchie Hayes because it bequeathed more than two-thirds of her property away from her husband, and he takes as an heir under the statute of descent and distribution.

The deceased was a full-blood Creek Indian, and her will disinherits her surviving spouse, and is not approved by any of the federal agencies mentioned in section 23 of act of April 26, 1906, as amended, supra. The will is therefore ineffectual to pass the title to her restricted land because it was not approved in the manner provided by Congress.

The will cannot be probated because of laches. William Grayson in 1911 filed an instrument purporting to be the last will of Hilly Bear, according to the terms of which Grayson was made the beneficiary as to the larger portion of her estate. Marchie

Hayes contested the probating of that will, and the petitioners in the instant case or those under whom they claim were in attendance and some of them testified as witnesses. The three beneficiaries in the will now offered for probate were present at the Grayson trial, and, although two of them were present when the instant will was written, neither made any effort to have it introduced at the time. Addie Nero, one of the beneficiaries in the will now before this court, testified on behalf of Marchie Hayes and said nothing regarding this will, although she was present when the same was written and knew she was one of the beneficiaries. The county court, after a full hearing, rendered judgment in 1911 admitting the Grayson will to probate. Marchie Hayes and others appealed from the judgment to the district court of Tulsa county, where the case was tried de novo. During this trial the instant petitioners or those under whom they claim were in attendance and testified and nothing was said regarding this will. The district court in 1912 rendered judgment refusing to probate the will, from which decree William Grayson appealed to the Supreme Court, and subsequently the appeal was dismissed and the judgment of the district court became final.

Thereafter an administrator was appointed, due notice to creditors was published, and the county court adjudged Marchie Hayes to be the lawful husband of Hilly Bear and her sole heir, and by decree distributed her whole estate to him; and he and those to whom he has sold have been in possession of the same since the distribution of the estate, which was more than ten years previous to the filing of the present petition.

The petitioners, or those under whom they claim and the devisees in the alleged will, were parties to the final action and had every opportunity to present the alleged will in this case and to make their claim to the estate during the four months given by published notice to creditors and claimants to file their claims. They failed to do so, but kept silent and have stood by all these years with full knowledge of the proceedings without any mention of the will, although the fact is undisputed that they knew of the existence of the same. A portion of the lands has been sold by order of the county court. This action was filed in June, 1926, nearly 15 years after the death of Hilly Bear. The petitioners are not entitled, under these circumstances, to have the will probated on account of their delay and laches.

The judgment of the district court is hereby reversed, with directions to affirm the judgment of the county court in refusing to admit the will to probate.

BRANSON, C. J., MASON, V. C. J., and HARRISON and LESTER, JJ., concur.